UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHAHEENA KHAN,

        Plaintiff,

    v.

BOARD OF EDUCATION OF THE CITY OF
CHICAGO,

        Defendant.

No. 17 CV 9300

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Shaheena Khan, a former elementary school principal, alleges that the Board of Education wrongfully terminated her in August of 2017. Her first amended complaint is divided into eleven counts but cites many more causes of action. The Board moves to dismiss the complaint as unintelligible under Federal Rule of Civil Procedure 8 and, alternatively, moves to dismiss counts one, two, four, six, nine, ten and eleven under Federal Rule of Civil Procedure 12(b)(6).

## I.  Legal Standards

A complaint must contain a short and plain statement of factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss, a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 680–82. A complaint must "contain either direct or inferential allegations respecting all the

material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).

## II.    Facts

The Board of Education of the City of Chicago manages the city's public schools. [27] ¶ 7.[1] Defendant Karen Saffold was an employee of the Board and Plaintiff Shaheena Khan's supervisor. *Id.* at ¶¶ 10, 44.

Khan was once the principal of Aldridge Elementary. *See id.* ¶ 28. In June of 2013, she entered into an employment agreement with the local school counsel for Aldridge Elementary that covered the period spanning July 1, 2013, to June 30, 2017. *Id.* She was awarded another (on or about July 21, 2016) covering the period spanning July 1, 2017, to June 30, 2021. *Id.* ¶ 99. Khan alleges that she was fired on August 24, 2016. *Id.* ¶¶ 150–52.[2]

## III.   Analysis

### A.    Rule 8

Khan's complaint is divided into eleven counts, but that number is misleading. Five of those counts (counts two, four, nine, ten and eleven) describe two or more legal theories in their titles alone. *See* [27] at 27, 33, 45, 49 and 54. Additional theories are embedded in others. *See, e.g.,* [27] ¶ 305 (claim for First Amendment retaliation

---

[1] Bracketed numbers refer to entries on the district court docket. Unless otherwise specified, citations are to the page numbers as they are reflected in the documents cited (e.g., if a page is numbered "Page 1" but appears three pages into the exhibit, it is cited as "Page 1").

[2] Khan's "motion to strike false or irrelevant facts" is moot (*see* [36] at 2); I accept as true Khan's factual allegations and disregard the Board's assertions to the contrary.

contained within count titled, "Declaratory Judgment, or in the Alternative, Common Law Writ of Certiorari").[3]

The amended complaint is not only disorganized, it is much longer than it needs to be. Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. *See also* Fed. R. Civ. P. 8(d)(1) ("[e]ach allegation must be simple, concise and direct"). A complaint does not need to contain every fact necessary to survive a motion for summary judgment. *Suarez v. W.M. Barr & Co., Inc.,* 842 F.3d 513, 523 (7th Cir. 2016). At 323 paragraphs and 56 pages, the Fifth Amended Complaint is neither short nor plain.

Still, Rule 8 also permits a party to set out "2 or more statements of a claim either alternatively or hypothetically, either in a single count or defense or in separate ones," Fed. R. Civ. P. 8(d)(2), and while dismissal under Rule 8 may be appropriate where a complaint is so long and poorly presented as to render it unintelligible, it is not necessary here. *See United States v. Lockheed-Martin Corp.*, 328 F.3d 374, 376, 378 (7th Cir. 2003) (dismissal appropriate where complaint contained 400 paragraphs over 155 pages with ninety-nine attachments); *Stanard v. Nygren*, 658 F.3d 792, 794 (7th Cir. 2011) (dismissal appropriate where complaint contained fifty-two pages, twenty-eight counts, multiple sentences longer than 300 words and so many grammatical and spelling errors that they were "too numerous to

---

[3] This is all in addition to Khan's other case against the Board, which is premised on a thirty-six page, 550-paragraph, eighteen-count Fifth Amended Complaint concerning the same parties, many of the same facts, and a few of the same legal theories. *See Khan et al. v. Board Of Education Of The City Of Chicago et al.*, No. 16-cv-08668 (N.D. Ill. Sept. 5, 2016).

add '[sic]' where required"). A more sensible complaint does not seem to be within Khan's counsel's skill set, and it would be a waste of time to ask him to try. The Board's motion to dismiss the complaint in its entirety is denied.

### B.    Rule 12(b)(6)

The Board moves to dismiss count one (breach of contract) for failure to state a claim, [29] at 3–5, as barred by the statute of frauds, *id*. at 5–6, as untimely, *id*. at 6–7, for failing to identify compensable damages, *id*. at 7–8, and as barred by the Illinois Human Rights Act, *id*. at 8; count two (due process violation) because the Board is immune, *id*. at 9; count four because the Board is not subject to ERISA, *id*. at 9–10; count six (First Amendment and Title VII retaliation) as duplicative and for failure to state a claim, *id*. at 10–11; count nine (declaratory relief) for failing to identify an actual controversy (i.e., for failure to state a claim), *id*. at 11–12, and counts ten (common law writ of certiorari) and eleven (malicious prosecution) for failing to state a claim. *Id*. at 12–13. Count one is dismissed as preempted by the Illinois Human Rights Act, counts two and nine are dismissed for failure to state a claim, and count six is dismissed as duplicative. Counts four, ten, and eleven are not dismissed.

#### 1.    *Count One (Breach of Contract)*

Khan's Amended Complaint contains two counts for breach of contract: count one addresses a sexual harassment policy allegedly contained with a set of rules the Board adopted in 2010, [27] ¶¶ 181–194, and count three addresses two performance contracts allegedly entered into in June of 2013 and July of 2017 between Khan and the Aldridge Local School Council. *Id*. at ¶¶ 210–217. The Board attached two

documents to its motion to dismiss that purport to be the contracts addressed by count three, *see* [29-1]; [29-2], but then did not move to dismiss count three. *See* [29]. These two documents are not relevant to the motion to dismiss and Khan's motion to exclude them is denied as moot. *See* [36] at 1.

As for count one, Khan did not attach to her amended complaint a copy of the "Rules of the Board of Education of the City of Chicago," which form the basis of her claim. [27] at ¶¶ 181–194. The Board tried to do it for her, attaching to its motion to dismiss (as Exhibit C) a copy of what it said were the Board's Rules. [29] at 3; [29-3]. Khan says Exhibit C is not the set of rules she is suing over. [36] at 4. In response to the Board's motion, and after requesting and receiving permission to do so at a status hearing, Khan filed a supplementary brief that attached what she asserts are copies of the policies that form the basis of her claim in count one. [53] ("in support of the allegations in . . . Count I of the Amended Complaint . . . [Khan] respectfully draws the court's attention to" exhibits 1 and 2 to the supplemental brief); [53-1]; [53-2]; [54].

Normally, a court must convert a motion to dismiss to one for summary judgment if it considers matters "outside the pleadings." Fed. R. Civ. P. 12(d). *See also* Fed. R. Civ. P. 10(c); *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452–53, (7th Cir. 1998) (the "pleadings" include the complaint, the answer, and any documents attached as exhibits). There is an exception that allows a court to consider documents omitted from the complaint but attached to a motion to dismiss when those documents are referenced in the complaint and "central" to the

plaintiff's claims. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (the "narrow exception" is "aimed at cases interpreting, for example, a contract"). And normally, when a document and a party's description of that document conflict, the exhibit controls. *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("[a] court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document").

The wrinkle here is that Khan argues that Exhibit C is not the contract. [36] at 1 (Khan "has no claim arising from Exhibit C"). In essence, she challenges the authenticity of the document the Board has submitted. So I decline to consider Exhibit C. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009) (declining to extend the exception for documents outside the pleadings where the party opposing their consideration disputes the documents' authenticity) (citing *Travel Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir. 1996)).

I will, however, consider Exhibits 1 and 2 to Khan's supplemental brief, [53-1]; [53-2], because both the exception in *Brownmark*, 682 F.3d at 690, and another exception for documents submitted by a plaintiff in response to a motion to dismiss, *see Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (when opposing a Rule 12(b) motion, a plaintiff "may submit materials outside the pleadings to illustrate the facts the [plaintiff] expects to be able to prove," so long as those "new elaborations" are consistent with the complaint), apply with equal force here, where the documents are referenced throughout the complaint, central to Khan's claims,

and were voluntarily submitted by Khan herself to illustrate new facts consistent with the allegations in her complaint.

The Board advances five arguments in favor of dismissing the first count of Khan's first amended complaint. [29] at 3–8. Ultimately, I agree with only one—the Illinois Human Rights Act preempts count one.

Sexual harassment policies are not generally binding contracts. But they can be when certain criteria—the traditional criteria for contract formation—are met. *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 490 (1987). Courts have extended the rule from *Duldulao* (that an employee handbook can create enforceable rights to a particular disciplinary procedure, even if that employee is at-will) to cover policies that promise other tangible benefits, *Dow v. Columbus-Cabrini Med. Ctr.*, 274 Ill.App.3d 653, 656 (1st Dist. 1995), *as modified* (Aug. 30, 1995) (payment for unused sick days); *DeFosse v. Cherry Elec. Prods. Corp.*, 156 Ill.App.3d 1030, 1035 (2nd Dist. 1987) (disability benefits), but have resisted the extension of this rule to intangible benefits. *Wexler v. Morrison Knudsen Corp.*, No. 99 C 6522, 2000 WL 1720344, at *4 (N.D. Ill. Nov. 15, 2000), *Svigos v. Petry Television, Inc.*, No. 95 C 5899, 1996 WL 388416, at *4 (N.D. Ill. July 9, 1996). In *Corluka v. Bridgford Foods of Illinois, Inc.,* an Illinois court found that a sexual harassment policy was a binding contract under *Duldulao*, and that the policy created an enforceable right for breach if the defendant failed to "end any harassment employees may experience." 284 Ill.App.3d 190, 195 (1st Dist. 1996). But I agree that "*Corluka* does not, however, stand for the broader proposition that an 'intangible work condition' can formulate a

basis for an employee's assertion of a contractual right." *Wexler v. Morrison Knudsen Corp.*, No. 99 C 6522, 2000 WL 1720344, at *6 (N.D. Ill. Nov. 15, 2000).

Nonetheless, "[a]ll that is required under *Duldulao*" at the motion-to-dismiss stage "is that the plaintiffs allege that there was a promise based on the written policy manual." *Langford v. Cty. of Cook*, 965 F.Supp. 1091, 1103 (N.D. Ill. 1997). Khan's First Amended Complaint contains such an allegation. [27] ¶ 187 ("[t]he 2010 Rules constituted an enforceable right for a promise of a work environment that was reasonably free from sexual harassment"). Moreover, the documents submitted by Khan contain language consistent with such a promise. [53-1] § 4-4(k) ("[a]ll employees must comply with laws and Board policies and rules prohibiting discrimination, including laws and policies prohibiting sexual harassment"); [53-2] (the "Employee Discipline and Due Process Policy") § 4-7 ("[s]exually harassing an employee, student, or individual in violation of the Board's Sexual Harassment Policy" is an "Act of Misconduct" punishable by warning, suspension or discharge).[4] In light of plaintiff's assertions that these two policies are only a "partial" set of those Khan expects to rely upon at trial, I cannot determine that, as a matter of law, the policies lack sufficient promissory language to state a claim for breach of contract.

Similarly, Khan alleges that there are no disclaimers in the 2010 Rules, *see* [27] ¶ 186 ("[t]he 2010 Rules did not contain any disclaimers to negate the promises made"), and the rules she attached to her supplemental brief contain no such

---

[4] Khan did not file a copy of the sexual harassment policy mentioned in Exhibit 2. *See* [53-2] § 4-7.

disclaimers. *See* [53-1]. Even though the "Employee Discipline and Due Process Policy" does contain a disclaimer, [53-2] § 1 ("this Policy should not be construed as a contract"), and even though such disclaimers can form the basis of a successful motion to dismiss, *see Miller v. Illinois Bell Tel. Co*., 157 F.Supp.3d 749, 758 (N.D. Ill. 2016); *Mooney v. Wyndham Worldwide Operations, Inc.*, No. 13 C 6592, 2014 WL 2959270, at *2 (N.D. Ill. July 1, 2014), Khan's contract claim could still be premised upon a contractual right arising from the 2010 Rules and/or the "Sexual Harassment Policy." Again, it is too early to determine that, as a matter of law, there was no policy that could support Khan's claim for breach of contract.

Given Khan's representation that her claim is based upon a written agreement, *see* [53] at 1, the Board's arguments about the statute of frauds, *see* [29] at 5–6, also fail, as do the Board's arguments about the statute of limitations contained within the Illinois Tort Immunity Act. *See* [29] at 6–7 ("[t]o the extent that Plaintiff's breach claim is dependent upon an implied contract, she must comply with the one year statute of limitations").

And Khan has alleged compensable damages. Khan alleges that, as a "proximate or direct" result of the Board's breach, she resigned from her position and suffered actual, compensatory, and consequential damages. [27] ¶¶ 193–94. Money damages are awarded in breach-of-employment-contract cases, *see Harden v. Playboy Enterprises, Inc.,* 261 Ill.App.3d 443, 455 (1st Dist. 1993), and there is no requirement that a pleading specify the type of damages sought. Wright & Miller, § 1235 Statement of Particular Matters – Contracts, 5 Fed. Prac. & Proc. Civ. § 1235 (3d ed.).

9

The Board's final argument is persuasive: the Illinois Human Rights Act preempts Khan's claim. In *Wootten v. Fortune Brands, Inc.*,[5] Wootten alleged that she had been sexually harassed in violation of the sexual harassment provision of a policy and procedures manual that was provided to her when she was hired. No. 98 C 4603, 1999 WL 705763, at *1 (N.D. Ill. Aug. 27, 1999). The court dismissed the claim as preempted by the Illinois Human Rights Act because the defendant had "promised merely to uphold the laws against discrimination" and the alleged breach was, therefore, "inextricably linked to the alleged civil rights violation," which was itself preempted by the Illinois Human Rights Act. *Id.* at *3.[6] *See also Seehawer v. Magnecraft Elec. Co.,* 714 F.Supp. 910, 912 (N.D. Ill. 1989); *Rhodes v. Deere*, No. 90 C 20336, 1991 WL 352612, at *10 (N.D. Ill. Oct. 18, 1991); *Isaacson v. Keck, Mahin & Cate*, No. 92 C 3105, 1993 WL 68079, at *8 (N.D. Ill. Mar. 10, 1993). Count one is dismissed.

---

[5] Khan argues that none of the cases cited by the Board post-date the holding in *Corluka*. Not only did *Wootten* post-date *Corluka,* it also expressly distinguished the holding for salient reasons. *Wootten v. Fortune Brands, Inc.*, No. 98 C 4603, 1999 WL 705763, at *3 (N.D. Ill. Aug. 27, 1999) ("[f]irst, this Court is not bound by a decision by the Appellate Court of Illinois. Second, the *Corluka* court cites no legal precedent for its overly broad holding that the IHRA does not preempt contract law. Third, the *Corluka* court reached its holding with scant analysis of the facts as applied to IHRA preemption law") (citations omitted).

[6] The Board's arguments could be considered jurisdictional, because the Illinois Human Rights Act deprives courts of "jurisdiction" over certain claims. 775 Ill. Comp. Stat. Ann. 5/8-111(D) ("[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act"). But whether viewed as the failure to state a claim or the lack of jurisdiction, the result is the same—a plaintiff cannot pursue a breach of contract claim that is properly understood to be a civil rights claim.

## 2. *Count Two (Due Process)*

Count two of Khan's amended complaint is titled, "Deprivation of Liberty Interest/ Violation of Due Process/Defamation *Per Se*/ First Amendment." [27] ¶¶ 195–209. The ensuing paragraphs make no further mention of a defamation claim. *See id.* In Khan's opposition to the Board's motion to dismiss, Khan argues that the defamation is a "necessary element" of the due process violation. [36] at 8. Khan then cites to *Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614, 621 (7th Cir. 2012), where the Seventh Circuit addressed a due process claim that was based on a "stigma plus" theory (implying that Khan's is, too). *See* [36] at 8. Under a "stigma plus" theory, the plaintiff brings a procedural due process claim based on a deprivation of a protected liberty interest and attempts to show that he or she was both defamed and that the defamatory statement "'alter[ed] or extinguish[ed]' 'a right or status previously recognized by state law." *Brown v. City of Michigan City, Indiana*, 462 F.3d 720, 730 (7th Cir. 2006).

There is no need to parse Khan's "stigma plus" theory: without a protectable liberty interest at risk, the issue of whether the statements were defamatory is inapposite. *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002) ("mere defamation by the government does not deprive a person of 'liberty' protected by the Fourteenth Amendment, even when it causes 'serious impairment of [one's] future employment'").

The protected liberty interest Khan points to is limited. "It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th

Cir. 1992). In *Wroblewski,* the plaintiff, a potential marina operator, was "effectively prevented . . . from obtaining *any* potential employment . . . in connection with the City's marina," yet still, "the sphere from which [plaintiff] was excluded" could not "properly be called 'an occupation,' like the practice of law." *Id.* His claim was denied. *Id.* at 457. *See also Illinois Psychological Ass'n v. Falk,* 818 F.2d 1337, 1344 (7th Cir. 1987) ("being a police officer is an occupation; being a police lieutenant is not. Being a psychologist is an occupation; being a member of a hospital's medical staff is not"); *McMahon v. Kindlarski*, 512 F.3d 983, 988 (7th Cir. 2008) (the defendant must have made it "virtually impossible for the employee to find new employment in his chosen field").

Count two says the Constitution was violated but never identifies a cause of action that allows Khan to sue the Board. Assuming Khan imagines that right derives from 42 U.S.C. § 1983, Khan's rights are limited in another important way: "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694–95 (1978); [43] at 8–9. "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.*

Khan has identified neither a protected liberty interest that was violated nor a qualifying policy or custom. Khan would not state a claim even if she could show that she had been shut out of every school in the city of Chicago. *See Wroblewski*, 965 F.2d at 455 (no due process violation where plaintiff "effectively prevented . . . from

obtaining *any* potential employment . . . in connection with the City's marina"). Nor has Khan identified a policy or custom that caused her injury; according to count two, the decision to terminate her contractual duties was the result of two isolated hearings that the Board conducted on May 24, 2017, and June 9, 2017. [27] ¶ 252. Count two is dismissed.

### 3. Count Four (ERISA, or in the Alternative, for Declaratory Relief)

The Employee Retirement Income Security Act only applies to certain benefit plans. *See* 29 U.S.C. § 1003. The law exempts plans "established and maintained" by any agency or instrumentality of any state government or political subdivision, 29 U.S.C. § 1003(b)(1); 29 U.S.C. § 1002(32), such as a school. *See Mudra v. Sch. City of Hammond*, No. 2:02CV260 PPS, 2004 WL 3318761, at *11 (N.D. Ind. Feb. 6, 2004). Khan argues that there is an exception to this exemption that applies because the Board elected to allow employees of private corporations to participate in the Board's benefit plan. [258] ¶ 495.

In *DeBartolo v. Indian Prairie Sch. Dist. No. 204,* the court suggested that the plaintiff's ERISA claim might have survived if the defendant school district had allowed private employers to participate in their benefit plan. No. 08 C 995, 2008 WL 3009931, at *2 (N.D. Ill. Aug. 5, 2008). *See, e.g., Livolsi v. City of New Castle, Pa.,* 501 F.Supp. 1146, 1150 (W.D. Pa. 1980); *Brooks,* 1990 WL 103572, at *2. There are reasons to be skeptical of this holding. *See* Order Granting in Part, Denying in Part the Board's Motion to Dismiss the Fifth Amended Complaint, *Khan et al. v. Board Of Education Of The City Of Chicago et al.*, No. 16-cv-08668 (N.D. Ill. Nov. 28, 2018]) ECF No. [287]. Nonetheless, the Department of Labor has issued an advisory opinion

that says exactly what *DeBartolo* only suggests: a government plan can become subject to ERISA if more than a *de minimis* number of private employees participate in the plan. [276-3] at 2–3 (300 out of 25,221 participants is *de minimis*; 175,000 out of 275,000 is not). Such constructions are "entitled to considerable weight." *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1135 (7th Cir. 1986). Khan's complaint alleges that more than a *de minimis* number of private employees participate in the plan. [27] ¶¶ 220–21 ("[a] substantial and more than *de minimis* number of employees of private companies . . . participated in the CPS benefits programs," including, for instance, employees of various local charter schools). As a result, Khan's claims cannot be dismissed for failing to state a claim.

### 4. Count Six (First Amendment/Title VII Retaliation)

The Board argues that Khan has brought the same claim twice. Courts have "broad discretion to dismiss a complaint for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 888 (7th Cir. 2012) (quotations omitted). "A suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *Id.* (quotations omitted). *See also Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir. 1993) ("[d]istrict courts are accorded a great deal of latitude and discretion in determining whether one action is duplicative of another") (citations omitted).

Here, count six of the first amended complaint alleges Khan engaged in protected speech, [27] ¶ 253, that the Board retaliated against Khan for engaging in that protected speech, [27] ¶ 256, and that the Board's actions violated the First

Amendment. *See* [27] at 37. The complaint seeks money damages. *Id.* ¶ 258. In Khan's other case, *Khan et al. v. Board Of Education Of The City Of Chicago et al.*, No. 16-cv-08668, ECF No. 258 (N.D. Ill.), count five of the Fifth Amended Complaint, titled, "Count V Against the Board Under 42 U.S.C. § 1983 Due Process/First Amendment/Equal Protection – Monell Claim," alleges that Khan engaged in protected speech, [258] ¶¶ 120–123, that the Board retaliated against Khan for engaging in that protected speech, [258] ¶ 124 (a)–(j), and that the Board's actions violated the First Amendment. *See* [258] at 10–14. That complaint seeks money damages. *See* [258] ¶ 130.

Khan is right that the two complaints mention different events—both when listing examples of Khan's protected speech and when listing examples of the Board's retaliatory conduct. *Compare Khan et al. v. Board Of Education Of The City Of Chicago et al.*, No. 16-cv-08668 ECF No. 258 ¶¶ 120–124 (N.D. Ill.) (Khan's protected speech included sending confidential complaints to the Office of the Inspector General, the Cook County State Attorney's Office, and others), *with* [27] ¶¶ 249, 252 (Khan's protected speech included the filing of her original case (No. 16-cv-08668), and her appearances before the Board to oppose administrative proceedings). But there is also overlap. *Compare Khan et al. v. Board Of Education Of The City Of Chicago et al.*, No. 16-cv-08668 ECF No. 258 ¶ 122 (N.D. Ill.) (protected speech included complaint sent to United States Department of Education) *with* [27] ¶ 251 (protected speech included complaint sent to United States Department of Education).

The claims, parties and available relief do not differ significantly. Count six is dismissed as duplicative. Khan can proceed with her First Amendment Retaliation claim in her other case. It is unimportant that, as a result, the operative complaint in that case may not include every fact that forms the basis of a viable First Amendment claim. It does not need to. *Suarez v. W.M. Barr & Co., Inc.,* 842 F.3d 513, 523 (7th Cir. 2016) ("a complaint need not contain every fact necessary to survive a motion for summary judgment").

### 5. Count Nine (Declaratory Relief)

Count nine of the first amended complaint asks for a declaratory judgment settling disputes the parties have about various facts. *See, e.g.,* [27] ¶¶ 296–297 ("[Khan] disagrees with the Board's implication that she is still employed by the Board, or that she remained employed after August 24, 2016," and "[a] controversy therefore exists as to whether [Khan] remained a Board employee after August 24, 2016 that could affect Khan's tax liability"). The Board says that the disputes in count nine do not constitute "controversies" as that word is used in the Declaratory Judgment Act. *See* 28 U.S.C. § 2201 ("[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought") (emphasis added).

The question in actions for declaratory judgment is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.,*

312 U.S. 270, 273 (1941); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987) (declaratory judgments are appropriately sought in two circumstances: "(1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision").

The situations presented by Khan fit neither situation described in *Tempco*. Khan could not sue for money damages or an injunction over any of the "controversies" she has identified, nor would it be inefficient or unfair to require the parties to wait for a decision on the many other claims that Khan has brought. This is in part because the relevant paragraphs in Khan's complaint cite no action that the Board has taken or plans to take, and no legal right that Khan enjoys that might prevent them from doing so. I decline to entertain the declaratory action in count nine. *Tempco*, 819 F.2d at 747 ("federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction"). Count nine is dismissed.

### 6.  *Count Ten (Common Law Writ of Certiorari)*

The Board moves to dismiss count ten because Khan failed to pursue her *writ of certiorari* remedy in the Circuit Court of Cook County. Neither of the cases the Board cites establish an exhaustion requirement for Illinois *writ of certiorari* claims. *See Fostiak v. Byron Cmty. Unit Sch. Dist. 226*, No. 11 C 50231, 2012 WL 6727535, at *2 (N.D. Ill. Dec. 27, 2012); *Young-Gibson v. Bd. of Educ. of City of Chicago*, 2011

IL App (1st) 103804, ¶ 56, 959 N.E.2d 751, 763, *as modified on reh'g* (Nov. 23, 2011). Khan, attempting to defend her *writ of certiorari* "claim," says that the remedy it would provide in state court is "inadequate," concludes that she will be prejudiced if she is forced to litigate the case in state court because she would not be afforded the opportunity to conduct discovery, and asks the Court, in the alternative, to stay her *writ of certiorari* claim. [36] at 13–14.

A common law *writ of certiorari* is not so much a "claim" as it is a request that a state court review a quasi-judicial decision; it is a jurisdictional hook that can be used to obtain review of some other cognizable legal claim. As the explained in *Brown v. Duncan,* 361 Ill.App.3d 125, 131 (1st Dist. 2005),

> The common law writ of certiorari was developed to provide a means whereby a petitioner who was without avenue of appeal or direct review could obtain limited review over an action by a court or other tribunal exercising quasi-judicial functions. The purpose of the writ is to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, that the inferior tribunal proceeded according to the applicable law. Quasi-judicial hearings are those which concern agency decisions affecting a small number of people on individual grounds based on a particular set of disputed facts that have been adjudicated.

Federal courts have jurisdiction over supplemental, state law claims for common law *certiorari*, and review those claims much in the same way an Illinois state court would review the decision of the tribunal exercising quasi-judicial functions: the question is whether, "the record contains any evidence which fairly tends to support the agency's findings." *Bodenstab v. Cty. of Cook*, 569 F.3d 651, 661 (7th Cir. 2009). Federal courts also have discretion over whether to issue a writ and should not issue one "in the

absence of substantial injury or injustice to the petitioner." *Piekosz-Murphy v. Bd. of Educ. of Cmty. High Sch. Dist. No. 230*, 858 F.Supp.2d 952, 962 (N.D. Ill. 2012).[7] The Board has not demonstrated that exhaustion is required and has advanced no other reason count ten should be dismissed. Khan should have an opportunity for court review of the Board's decision. The Board's motion to dismiss Khan's request for *writ of certiorari* is denied. The count is understood to challenge—under the principles of court review of agency decisions—the removal of Khan from her position as principal under 105 ILCS 5/34-8.3(d).

### 7. *Count Eleven (Malicious Prosecution)*

The Board argues that Khan's malicious prosecution claim should be dismissed because malicious prosecution claims are only appropriate in response to criminal proceedings that result in a disposition indicative of innocence, and because Khan has failed to state that the Board lacked probable cause to bring the proceeding in the first place. [29] at 13 (citing *Porter v. City of Chicago*, 393 Ill.App.3d 855, 858 (1st Dist. 2009)). Malicious prosecution claims can be brought under Illinois law in response to "civil judicial" as well as criminal proceedings, *Swick v. Liautaud*, 169 Ill.2d 504, 512 (1996), but the Board argues that its termination proceedings (under 105 ILCS 5/34-85) were neither criminal nor civil. [43] at 15. Neither Khan nor the Board cite any authority on the issue. Precedent suggests that administrative proceedings might not qualify as civil judicial proceedings, *see Greer v. DeRobertis*,

---

[7] This all being said, Khan's complaint is improper insofar as it seeks to assert a cause of action for *writ of certiorari* against the Board. Khan cannot sue the Board for *writ of certiorari* any more than Khan can sue the Board for "interlocutory appeal." These are procedural mechanisms, not causes of action.

568 F.Supp. 1370, 1376 (N.D. Ill. 1983) (malicious prosecution claims do not extend to prison disciplinary proceedings), and since Illinois disfavors the tort, *Cult Awareness Network v. Church of Scientology Int'l*, 177 Ill. 2d 267, 286 (1997), I conclude that the state supreme court would not authorize the claim here.

A malicious prosecution claim would also require "special injury" going "beyond the usual expense, time and annoyance involved in defending a lawsuit." *Indep. Plus, Inc. v. Walter*, 2012 IL App (1st) 111877, ¶ 18. Khan's complaint alleges that she suffered "special damages" including the "loss of insurance and retirement benefits." [27] ¶ 317. But these are the ordinary consequences of loss of employment, and the complaint also alleges that the 34-85 hearing never got off the ground; the proceedings were withdrawn shortly after being instituted and (it appears) did not directly result in formal punishment. *See* [27] ¶¶ 312–13. No special injury is attributed to the underlying administrative process, so the complaint fails to state a malicious prosecution claim (even if I inferred that abandoning the 34-85 hearing amounted to a vindication for Khan).

### 8. Count Eleven (Violation of 29 U.S.C. § 1166)

In addition, the Board argues that Khan's claim under the "Consolidated Omnibus Budget Reconciliation Act", or "COBRA," should be dismissed because the Board was not required to provide the types of notices that Khan alleges the Board failed to provide. [29] at 13. *See* 29 U.S.C § 1166(a)(2) ("the employer of an employee under a plan must notify the administrator of a qualifying event" such as termination); (a)(4) ("the administrator shall notify . . . any qualified beneficiary with respect to such event"); 29 U.S.C. § 1132(c)(1) ("[a]ny administrator (A) who fails to

meet the requirements of [] section 1166[(a)(4)] of this title, . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper"); 29 U.S.C. §§ 1132(a)(1)(A); (c)(1) (individuals may bring civil action for violations of section 1166). Khan responds that the Board was the plan's sponsor and that, as such, it had a notification duty. In certain circumstances—including those where the employer is also the "plan sponsor"—COBRA's notification requirements can apply to the employer. *Fenner v. Favorite Brand Int'l, Inc.,* 25 F.Supp.2d 870, 874–75 (N.D. Ill. 1998). *See also* [27] ¶ 314 (Khan alleging that the Board "sponsors its health insurance plan"). The Board left this point unaddressed in its reply. Its motion to dismiss count eleven is denied insofar as that motion addresses the notification requirements described in 29 U.S.C § 1166.

## IV.   Conclusion

For the foregoing reasons, the Board's motion [29] is granted in part, denied in part. Counts one, two, six, and nine are dismissed, as is the malicious prosecution claim. If Khan wants to amend the complaint, she must file a motion asking for

permission and attach her proposed amended complaint as an exhibit. If the proposal is as unwieldy as the current complaint, the motion will be summarily denied.

ENTER:

Manish S. Shah
United States District Judge

Date: November 28, 2018